NAOMI RICE *et al.*, Plaintiffs-Appellants, *v.* SNARLIN, INC., Defendant-Appellee.

(No. 54321;

First District—November 18, 1970.

Ron Fritsch, of Chicago, for appellants.

Stewart I. Gartner, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Naomi Rice and Bobbie J. Rice (a minor by her next friend, Naomi Rice) appeal the order striking their complaint and dismissing the cause. This court entered an order appointing the Attorney General of the State of Illinois as *amicus curiae* to file a brief directed to the issue of whether a private party is authorized by the Consumer Fraud Act. (Ill. Rev. Stat., 1967, ch. 121½, par. 261—272) to bring a cause of action for practices therein declared unlawful.

On appeal plaintiffs contend:

1. Defendant's motion to dismiss was insufficient.
2. The complaint alleges the commission by defendant of an unlawful practice under Section 2 of the Consumer Fraud Act.
3. A suit for a declaratory judgment, an injunction, damages and other relief may be based upon the commission of an unlawful practice under Section 2 of the Consumer Fraud Act.
4. Count two of the complaint alleges facts sufficient to allow the plaintiffs to seek relief for all members of a class of persons similarly situated.

On January 22, 1969, plaintiffs filed their two count complaint in equity against defendant, Snarlin, Inc. The complaint in substance alleged that plaintiffs had executed a "retail installment-conditional sales contract" with defendant on April 20, 1968. The contract provided that for $75.00 consideration, payable in $5.00 monthly installments, defendant would include plaintiff Bobbie J. Rice's name, address and phone in a directory listing to be sent to 500 companies.

Plaintiffs further alleged that subsequent to execution of the contract, defendant sent them what was purportedly a copy of the directory listing. It consisted of one page with a picture of a young woman in the upper right hand corner. To the left of the picture the advertisement read:

"HANDY READY-REFERENCE DIRECTORY OF ATTRACTIVE, TALENTED MODELS—AVAILABLE FOR IMMEDIATE ASSIGNMENTS

Below you will find listed the names, addresses, phone numbers and general description of several amateur and/or professional models. This represents girls of mixed nationalities who are interested in making contacts for modeling assignments in business and industry.

If you are planning a fashion show, a newspaper or magazine advertisement or mailing piece which needs an illustration * * * if you need test shots in the planning of a new sales promotion * * * if you need a hostess at your next meeting or trade show or just a pretty girl to attract customers to your store or display, you may find

one of these models will fit your needs. You may obtain a photograph and/or additional information by calling the models.

Do not call our office. Make all contact directly with the model. This directory is published as information only. We cannot be responsible for fees, representations or any dealings between the model and prospective employer."

Below the picture and advertisement, Bobbie J.'s name, address, telephone, height and size were furnished.

Plaintiffs further alleged that at the time of execution of the contract the defendant falsely and fraudulently represented to plaintiffs that the information on Bobbie J. would be included in a directory sent to 500 companies; that defendant falsely and fraudulently failed to reveal to the named plaintiffs that the directory was merely an advertising flyer and that all the companies or most or many of them may not have had the slightest need or interest in obtaining the services of a model and that plaintiffs believed that the companies had been selected at random.

The above factual occurrences were then alleged to be violative of Section 2 of the Consumer Fraud Act, Ill. Rev. Stat. 1967, ch. 121½, par. 262, and plaintiffs prayed: (1) that Naomi Rice be granted leave to sue on behalf of Bobbie J. Rice, as next friend, (2) that the court declare the contract illegal and void and the acts complained of to be unlawful under Section 2 of the Consumer Fraud Act, (3) that the court enjoin defendant from transferring the contract and attempting to collect any indebtedness allegedly due, (4) that judgment of $1,025 be entered against defendant, (5) that a special finding of malice against defendant be entered and a writ of *capias ad satisfaciendum* issue and (6) that other appropriate relief be granted.

Plaintiff's second count realleged all material factual matters of the first count and prayed for similar relief for all members of the same class of persons as plaintiffs.

Defendant moved to strike the complaint and dismiss the cause for the following reasons:

(1) Failure to plead sufficient facts to show fraud,

(2) Failure to set forth any specific acts of fraud,

(3) Irrelevancy of matters alleged,

(4) Existence of adequate remedies at law,

(5) Failure to show common interest between plaintiffs and the alleged class of persons plaintiffs seek to represent,

(6) Lack of other parties' interest in disputed contract,

(7) Singularity of interest of all parties who may have contracted with defendant.

Defendant's motion to strike the complaint was sustained and the plaintiffs were granted 30 days to file an amended pleading. Plaintiffs then moved to vacate the order striking the complaint electing to stand upon the complaint as originally filed. Plaintiffs' motion was denied and the cause dismissed. Plaintiffs appeal.

*Opinion*

■■ Plaintiffs initially contend that defendant's motion to dismiss was insufficient in that it failed to specifically allege any defects of the complaint as required by Section 45 (1) of the Civil Practice Act. (Ill. Rev. Stat., 1967, ch. 110, par. 45 (1)). However, since plaintiffs failed to raise this objection below, it cannot be argued now for the first time on appeal. *Zanbetiz v. Trans World Airlines, Inc.* (1966), 72 Ill.App.2d 192.

Plaintiffs next contend that the first count of their complaint properly alleged the commission by defendant of an unlawful practice under Section 2 of the Consumer Fraud Act.

Section 2 provides:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice * * *"

Plaintiffs' complaint alleged that defendant committed an unlawful practice under Section 2 of the Consumer Fraud Act in that defendant both misrepresented and omitted or concealed material facts "with the intent to induce plaintiffs to act thereon." The facts alleged as material by plaintiffs are the nature of the directory listing and the method of selection of the companies to receive the listing.

In relation to the purported misrepresentation, the complaint alleged:

"Defendant falsely and fraudulently represented to the named plaintiffs that the plaintiff Bobbie J. Rice's name, address, and phone number would be included in a directory that would be sent to 500 companies."

However, Exhibit C of plaintiff's complaint, the directory listing supplied by defendant, includes all the specified information. In addition, there is no allegation that defendants failed to send the listing to the 500 companies as promised. On the contrary, plaintiffs seemingly admit that the listing was mailed to companies by alleging that they believe the companies were selected at random.

Plaintiffs alleged that defendant misrepresented the fact that a directory listing was to be mailed, when in fact, the listing mailed was what

plaintiffs term a "mere advertising flyer." However, since the listing contained all of the promised information and directed the recipients who might be interested in hiring as models the named girls, we find that no misrepresentation of fact occurred.

Therefore, we hold that plaintiffs have failed to allege the commission of an unlawful practice based upon misrepresentation as declared unlawful by Section 2 of the Consumer Fraud Act.

In relation to the purported omissions and concealments, the complaint alleged:

"[D]efendant falsely and fraudulently failed to reveal to the named plaintiffs that the directory was a mere advertising flyer (Exhibit C) and that the 500 companies (or all, most or many of them) may not have had the slightest need or interest in obtaining the services of a model."

The complaint further alleges that the plaintiffs believe defendant selected the 500 companies at random.

■■ The Consumer Fraud Act requires that the wrongful omission and concealment must be of a "material fact." To constitute materiality in cases of alleged fraud the fact must be such that the party would have acted differently if he had known the undisclosed facts. *Lytton v. Cole* (1964), 54 Ill.App.2d 161.

In the present case the obvious purpose of the directory listing was to secure suitable employment for Bobbie J. as a model. Any fact which would either substantially enhance or detract from this purpose would be material.

Defendant's services would primarily consist of two functions. The first is to prepare a directory listing, the second, to distribute the directory to 500 companies. The efficacy of these two functions would depend upon the nature and type of directory listing afforded and the method of selection of the 500 companies. The failure to inform plaintiffs as to these two important factors is the very wrong which plaintiffs allege.

■■ Therefore, we hold that plaintiffs have sufficiently alleged the commission of an unlawful practice based upon omissions and concealments under Section 2 of the Consumer Fraud Act. Additionally, we find no merit in defendant's contention that the plaintiffs do not fall within the definition of "consumer" under the Act.*

---

* Section 1 (e) of the Act provides: "The term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household or in connection with the operation of his household."

Section 1 (b) provides: "The term 'merchandise' includes any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services."

Plaintiffs next contend that having properly alleged an unlawful practice under Section 2 of the Act, they may properly pursue a cause of action for declaratory judgment and other appropriate relief. However, both defendant and the Attorney General, as *amicus curiae* disagree.

Defendant contends that declaratory judgment will not lie since there is an existing remedy for breach of contract. Defendant's contention is based upon the presumption that plaintiffs only request for determination is whether or not they received what they contracted for, *i.e.* a directory listing. However, plaintiffs do not allege a breach of contract, but rather, that the contract is invalid in light of Section 2 of the Consumer Fraud Act.

The Attorney General, as *amicus curiae*, contends that the plaintiff may not rely on the Consumer Fraud Act for the following reasons:

1. The Attorney General of the State of Illinois is the only party authorized by the Consumer Fraud Act to bring a cause of action based upon the practices therein declared unlawful, except for the practice described in Section 21 of the Act.

2. The legislature, by enacting the Consumer Fraud Act, neither diminished nor enlarged upon the rights of private parties to file actions in fraud.

The Consumer Fraud Act initially provides:

"AN ACT to protect consumers and borrowers against fraud and certain other practices by or on behalf of sellers and lenders of money and to give the Attorney General certain powers and duties for the enforcement thereof."

Sections 2 through 2L describe the practices declared unlawful by the Act. None of these sections, except for Section 21 (Collection of obligation by communication with employer—Unlawful practice—Civil liability), expressly authorize suits for civil damages by an injured party. Section 21 provides that before a person may attempt to collect an obligation by communication with the obligor's employer, the obligation must have been in default for at least 30 days and the obligor must have been given at least 5 days prior notice of the intention to so communicate. A violation of this provision is an unlawful practice and expressly renders the party liable in a civil suit for damages.

Sections 3, 4, 5, and 6 are of no concern to the resolution of this appeal since they merely prescribe investigatory methods for the Attorney General where it appears to him that the Act is being violated.

Section 7 of the Act provides that the Attorney General may seek an injunction prohibiting a person from engaging in those practices declared unlawful whenever it appears to him that the Act is being violated. Ancillary to this injunctive relief, the section further provides:

"The court may make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices, *or which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice in this Act declared to be unlawful* including the appointment of a receiver in cases of substantial and willful violation of the provisions of this Act." (Emphasis supplied).

Section 8 defines the powers of a receiver appointed pursuant to Section 7 and further provides:

"Any person who has suffered damages as a result of the use or employment of any unlawful practice and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses."

Section 9 provides:

"Subject to an order of the court terminating the business affairs of any person after receivership proceedings held pursuant to this Act, the provisions of this Act shall not bar any claim against any person who has acquired any moneys or property, real or personal, by means of any practice herein declared to be unlawful."

Sections 10, 11, and 12 are of no concern to the resolution of this appeal.

The Attorney General interprets the Act to mean that a consumer can recover civil damages in the following three instances only:

(1) A consumer has been wronged by a practice declared unlawful in Section 21.

(2) It has appeared to the Attorney General that a person has engaged in or is engaged in a practice declared unlawful by the Act and he has obtained an injunction against such practices. (Section 7).

(3) The Attorney General has obtained an injunction pursuant to Section 7 and the court has appointed a receiver whereupon the consumer may participate as a general creditor to the extent of his out-of-pocket losses.

We disagree. The sections declaring various practices unlawful clearly expand the consumers' rights beyond that of the common-law. Sections 2B (Sales at residence of buyer—Avoidance of contract-Refund), 2C (Credit application—Refusal—Return of down payment), and 2L (Retail sale of motor vehicles) expressly create a liability on the seller to the consumer. While the Attorney General admits to the express liability in these sections, he argues that without the use of the magic words "liable in a civil action for damages" no cause of action is created or intended. We believe this argument to be violative of sound reason and

logic. By creating liability on the part of the seller, the legislature obviously must have intended to invest the consumer with the right to enforce his claim. To deny this right would be to effectively release the seller from the liability provided for in the Act.

■■ Section 2 (Unlawful practice), 2A (Chain referral sales technique or agreement—Prohibition), 2D (Negotiable instruments in connection with installment sales—Defenses against assignee), 2G (Resale as unlawful practice), 2H (Collection of obligation from spouse of obligor—Penalty), 2J (Advertisements of price and periodic payments—Violations), and 2K (Advertisement of credit rates—Violations) while not expressly providing for liability on the seller, declare certain practices in consumer sales to be unlawful. We find that these sections inferentially create a liability on the seller and therefore, a corresponding cause of action in the consumer. Our interpretation is further buttressed by Section 9 wherein it provides:

"* * * the provisions of this Act shall not bar any claim against any person who has acquired any moneys or property, real or personal, by means of any practice herein declared to be unlawful."

While this section specifically pertains to claims arising against sellers placed in receivership pursuant to Section 8, it recognizes the causes of action created in favor of the consumer in the preceding sections. Section 8 does not bar these claims but merely provides a specific method for their liquidation.

Therefore, having found that the Consumer Fraud Act authorizes private causes of action, we hold that the trial court erred in dismissing the first count of plaintiffs' complaint as it pertained to an unlawful practice based on omissions and concealments under Section 2 of the Act.

Plaintiffs next contend that the second count of their complaint alleges facts sufficient to allow them to seek relief for all members of a class of persons similarly situated. Plaintiffs cite *Kimbrough v. Parker*, 344 Ill. App. 483 (1951).

In *Kimbrough* five contestants in a puzzle contest brought a class action on behalf of all contestants alleging fraud. The trial court entered judgment in plaintiffs' favor. On appeal the court affirmed plaintiffs' right to maintain the class action and stated at page 486:

"We think the chancellor correctly decided that this suit was properly maintainable as a class suit: On December 16, 1947, thirty-three hundred entries had been received from the United States and foreign countries. There is a common fund from which contributions are to be returned. The contributions are of small amounts. The inducements were substantially the same for all contestants since there were no

personal solicitations. The issues between all contestants and defendants are the same. There are no actual or potential conflicts of interest. The five plaintiffs are fairly representative and have fairly presented contestants' side of the common issues. The sum of the foregoing elements we think convincingly sustains the chancellor's decision."

Unlike *Kimbrough*, the present case represents a situation where the contracts were personally solicited. Plaintiff argues that the personal solicitation referred to in the cited portion of *Kimbrough* is not relevant, since in the present case the alleged wrong is the contract form used to perpetrate the unlawful practice.

■■ We disagree. The alleged wrong was the omission and concealment of material facts which cannot be held to be confined to the provisions of the form contract. The personal solicitation of the contract is relevant to determine whether the defendants did in fact omit and conceal the material facts. Since the personal solicitations might well have varied, the plaintiffs and the members of the class they seek to represent fail to share the requisite common question of fact. *Moseid v. McDonough*, 103 Ill.App.2d 23 (1968).

Therefore, the trial court correctly dismissed the second count of plaintiffs complaint.

In view of the foregoing, the judgment is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

ENGLISH and DRUCKER, JJ., concur.