[No. 29889-2-III.   Division Three.   March 15, 2012.]

RIVER HOUSE DEVELOPMENT, INC., *Appellant*, v. INTEGRUS
ARCHITECTURE, PS, *Respondent*.

*Timothy B. Fennessy, John R. Layman,* and *Nikalous O. Armitage* (of *Layman Law Firm PLLP*), for petitioner.

*William D. Hyslop* (of *Lukins & Annis PS*), for respondent.

¶1 SIDDOWAY, J. — A contractual right to mediate or arbitrate a dispute may be waived, including by pursuing litigation. River House Development Inc. appeals the trial court's determination that it waived its right to mediate and then arbitrate a construction dispute with its architect by filing what River House contends was a protective lawsuit, engaging in discovery and discovery motion practice, and participating in and complying with the court's scheduling procedures.

¶2 We hold that whether the right to arbitrate has been waived by litigation conduct is an issue to be resolved by the court, not the arbitrator, as urged by River House. While arbitration is favored under Washington law and River House clearly asserted its right to arbitrate in its complaint, it thereafter took too many steps down the path of litigation and too few down the path of arbitration to reasonably claim that its conduct was consistent with a continuing right to arbitrate. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶3 River House Development Inc. engaged Integrus Architecture PS to provide architectural services for a condominium project, using an American Institute of Architects (AIA) standard form agreement.[1] The contract included alternative dispute resolution (ADR) provisions providing for mediation, and then arbitration, of disputes arising out of or related to the agreement.

¶4 The project reached substantial completion in the summer and fall of 2008. River House took issue with the

---

[1] AIA Document B151—1997, the "Abbreviated Standard Form of Agreement Between Owner and Architect." Portions are included in the clerk's papers at, e.g., 257-58.

quality and timeliness of the construction. When its general contractor commenced arbitration against River House, it responded with a counterclaim against the general contractor for the asserted problems and deficiencies. It resolved its dispute with the general contractor through mediation. In the process of mediating that dispute, River House came to believe that many of the problems with construction were a result of Integrus's failure to meet its contractual obligations.

¶5 In February 2010, River House sent a six-page demand letter to Integrus, outlining its claims and an estimated $3.2 million in resulting damages, and stating its intent to pursue mediation and arbitration.[2] It followed up with correspondence to Integrus expressing concern that limitations periods for some claims might run shortly and requesting a tolling agreement, a draft of which it forwarded to Integrus in early March. On March 17, after Integrus refused to enter into the proposed agreement, River House served, but did not file, a complaint styled for filing in the Spokane County Superior Court. The complaint alleged that the parties' contract "provides that INTEGRUS and RHD [River House] agree to mediate and/or arbitrate disputes arising under the Contract prior to completing litigation." Clerk's Papers (CP) at 11 (Compl. ¶ 3.6). It prayed for judgment in its favor awarding damages, costs, and fees, but at the same time "[f]or an order staying this litigation and compelling the parties to engage in alternative dispute resolution as provided in the Contract." *Id.* at 13-14.

¶6 The parties corresponded frequently in the several months that followed. River House proposed an informal, agreed discovery process in early April. Integrus responded that it intended to serve formal interrogatories and requests for production. River House ultimately served formal discovery first, dispatching its first set of interrogato-

---

[2] Both parties were represented by their outside law firms in this and every other communication and proceeding described hereafter.

ries and requests for production in late April. Integrus served its first set of interrogatories and requests for production in June.

¶7 On June 1, River House filed its complaint, apparently in light of the tolling statute at RCW 4.16.170 and a continuing concern about limitations issues. If arbitration was intended, filing suit in superior court was unnecessary and potentially insufficient; statutes of limitation apply to arbitration proceedings only if and as provided by the arbitration agreement. *Broom v. Morgan Stanley DW, Inc.*, 169 Wn.2d 231, 243, 236 P.3d 182 (2010); *City of Auburn v. King County*, 114 Wn.2d 447, 450, 788 P.2d 534 (1990). But River House argues that this was not entirely clear until our Supreme Court's decision in July 2010 in *Broom*. After the lawsuit was filed, both River House and Integrus continued to express a desire to mediate the dispute.

¶8 The first step toward actually staying the litigation was suggested by River House in August. A status report was due to be filed with the court before September 10, the date set by the court for a status conference with the assigned judge. Among the information required by the court's report form was whether "the parties agree to go through mediation/alternative dispute resolution." CP at 286. The form also asked whether there were any "unique issues requiring special preparation by the court." *Id.* River House proposed to answer "yes" to the inquiry about mediation/alternative dispute resolution and to advise the court, with regard to "unique issues requiring special preparation," that

> [t]he parties' contract requires mediation and arbitration. The parties will be pursuing those dispute resolution methods precedent to continued litigation in this Court and may request that the Court stay the matter until such time as those methods have been exhausted.

*Id.* At the same time, however, River House proposed indicating a two-week estimated "length of trial" and that a 12-person jury would be demanded. *Id.* at 286-87.

¶9 Integrus's response to the proposed joint case status report signaled that it remained committed to mediation but did not acknowledge any continuing duty to arbitrate. It struck River House's proposed language indicating that arbitration was required and would be pursued. A September 8 letter from Integrus's lawyer transmitting the revised report to River House stated:

> In regard to paragraph 2.d., I recommend that your inserted language be deleted. There is no need for this inclusion at this time as it does not affect scheduling for the case. There is ample time for the parties to mediate, as we have all agreed to do, long before any trial date in this case. Likewise, the language is not accurate as RHD has not filed an arbitration claim. Finally, the question on paragraph 2.d. asks about special "issues requiring preparation by the court." The issue of mediation does not require special court preparation or court intervention.
>
> With regard to your proposed stipulation to stay the case, we do not agree to the same. We have always said that Integrus will mediate this dispute with River House Development, Inc. The sole issue has been the timing of mediation. We have always stated that Integrus will mediate when we know enough about RHD's claims for the mediation to be truly meaningful and in order that there might be the possibility of resolving this case during that mediation. There is no need for a stay of proceedings for that to occur.

*Id.* at 288.

¶10 Integrus's changes to the joint case status report were accepted by River House. As a result, the court's information at the time of the parties' in-person scheduling conference with the judge on September 10 was that the parties had agreed to mediate but, failing a mediated result, otherwise agreed on a two-week trial with a 12-member jury. The court entered a scheduling order that set a number of deadlines, including witness identification deadlines in December (plaintiff's) and February (defendant's), a discovery cutoff date of May 9, 2011, and a trial date of July 11, 2011.

¶11 The parties thereafter served and filed disclosure of their lay and expert witnesses in accordance with the deadlines set by the scheduling order. They exchanged their objections and responses to one another's discovery requests on January 26, 2011. Integrus was dissatisfied with River House's discovery responses and with additional information provided by River House after the lawyers conferred. On February 18, Integrus filed a motion to compel, which it set for hearing on March 18.

¶12 During the March 18 hearing on the discovery motion, Integrus represented in passing that it was readying for the July 11 trial date but intended to participate in mediation once discovery was complete. River House contested the motion to compel, but not on the basis of an assumed obligation to arbitrate. It argued instead that it had produced voluminous information, some of the discovery was objectionable, and it was continuing to supplement its production. It made no mention of arbitration. Its only reference to the manner in which the parties' dispute would be adjudicated was to argue:

> Integrus has asked us to put on our full trial in our initial discovery responses. And under [*Weber v. Biddle*, 72 Wn.2d 22, 431 P.2d 705 (1967)], we're not required to outline each and every fact that we're going to present at trial. We do have a duty to make a good-faith effort to answer these questions, and we've done that.

Report of Proceedings at 9-10.

¶13 The trial court found River House's discovery responses inadequate and ordered it to provide sufficient responses within 10 days.

¶14 On March 28, the date on which River House's supplementation of its discovery responses was required, it filed a request for mediation with the American Arbitration Association, the mediation body identified in its contract with Integrus. It also filed, with the trial court, motions for reconsideration, for a protective order, and to stay its

lawsuit and compel mediation and arbitration. Collectively, its motions asked the trial court to recognize the parties' contractual duty to mediate and arbitrate and to stay any duty to comply with its discovery order and all other proceedings until mediation and arbitration were completed. In a consolidated response to the motions served on March 30 and filed on March 31, Integrus argued that River House had waived interrelated mediation and arbitration rights.[3]

¶15 A hearing on the motions was held on shortened time on April 1. The court found waiver of the right to mediate and arbitrate and denied River House's motions. An order to that effect was entered on April 27.

¶16 Following entry of the order, River House filed a second motion for reconsideration, explaining that through a lapse in office protocol, Integrus's briefing raising the defense of waiver had not been brought to the attention of the assigned lawyers prior to the April 1 hearing. This was consistent with surprise that had been expressed at the hearing by River House's lawyer, who said he had not seen any briefing on the issue of waiver.

¶17 In asking for reconsideration, River House argued that the court should have referred the issue of waiver to the arbitrator; that arbitration had not been waived; and that Integrus should, in any event, be estopped to deny a duty to mediate and arbitrate in light of prior indications that it was willing. Integrus filed a response. On May 17, the trial court denied the motions.

■ ¶18  This appeal followed. An order denying a motion to compel arbitration is appealable as a matter of right under RAP 2.2(a)(3). *Verbeek Props., LLC v. GreenCo Envtl., Inc.*, 159 Wn. App. 82, 86, 246 P.3d 205 (2010).

---

[3] Mediation was to precede arbitration under the agreement (indeed, it was a condition precedent to any sort of action), and both parties and the court have treated River House's asserted waiver of ADR as a single issue. While other parties utilizing the AIA contract might view the obligation and the waiver issue differently, our analysis proceeds on the basis presented by the parties.

ANALYSIS

¶19 River House raises three issues on appeal: (1) Whether the trial court improperly decided the issue of waiver rather than refer it to the arbitrator, (2) whether the court erred in finding that River House waived mediation and arbitration, and (3) whether Integrus should be estopped to deny a duty to mediate and arbitrate. We address the issues in turn.

I

¶20 Private arbitration in Washington is governed exclusively by statute. *Broom*, 169 Wn.2d at 236 (citing *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 893, 16 P.3d 617 (2001)). Whether a trial court exceeds its statutory authority and whether it properly denies a motion to compel arbitration are both questions of law that we review de novo. *See In re Interest of M.B.*, 101 Wn. App. 425, 454, 3 P.3d 780 (2000), *review denied*, 142 Wn.2d 1027 (2001); *Otis Hous. Ass'n, Inc. v. Ha*, 165 Wn.2d 582, 586, 201 P.3d 309 (2009).

¶21 As a threshold matter, Integrus contends that argument over who should determine the issue of waiver—the court or the arbitrator—was not raised below and should not be considered for the first time on appeal. Generally, appellate courts will not entertain issues raised for the first time on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008).

¶22 Here, however, River House did raise the issue below, albeit belatedly, in its timely motion seeking reconsideration of the court's order refusing to stay litigation and compel mediation and arbitration. As grounds for reconsideration, River House argued that the court's order was contrary to law, that an error of law occurred, and that substantial justice had not been done. CR 59(a)(7)-(9). One

of the legal errors alleged was the court's failure to refer the issue of waiver to the arbitrator.

¶23 By bringing a motion for reconsideration under CR 59, a party may preserve an issue for appeal that is closely related to a position previously asserted and does not depend upon new facts. *Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986); *Reitz v. Knight*, 62 Wn. App. 575, 581 n.4, 814 P.2d 1212 (1991). But while the issue is preserved, the standard of review is less favorable. *Cf.* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 34:3, at 434 (2d ed. 2009) (effect on standard of review where error is preserved by motion for new trial). CR 59 provides that on the motion of an aggrieved party the court "may" vacate an interlocutory order and grant reconsideration. The trial court's discretion extends to refusing to consider an argument raised for the first time on reconsideration absent a good excuse. *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995) (applying parallel federal rule), *cert. dismissed*, 516 U.S. 1103 (1996). We review a trial court's denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 684-85, 41 P.3d 1175 (2002).

¶24 River House offered what it characterized as its excusable mishandling of Integrus's briefing as its excuse for not raising the "authority" argument earlier. CP at 854. The trial court did not reject the motion out of hand, as untimely. Because Integrus had the opportunity to respond and the trial court entertained and decided the issue, RAP 2.5(a) is not a reason for us to deny review.

¶25 Turning to the merits, River House argues that Division One of our court has addressed the issue of a court's authority to decide the issue of waiver, and held that "the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc.*, 148

Wn. App. 400, 406 n.8, 200 P.3d 254 (2009) (alteration in original) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). *Heights* involved an arbitration clause in subcontracts between a general contractor and specialty contractors working on a condominium project. The clause included a 21-day time limit for providing written notice of a claim. When asked to compel arbitration, the trial court reviewed not only the enforceability of the arbitration clause, but also whether there had been compliance with the time limit, an issue it characterized as a " 'procedural pre-requisite[ ].' " *Id.* at 405.

¶26 *Heights* therefore involved waiver by delay, rather than waiver by litigation conduct. Following the United States Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), which held that a party's compliance with a six-year time limitation for arbitration contained in the arbitration agreement was a question for the arbitrator (a decision also cited by Division One in *Heights*, 148 Wn. App. at 406 n.8), courts have increasingly referred the issue of waiver by delay to the arbitrator. *See, e.g.*, David LeFevre, Note, *Whose Finding Is It Anyway?: The Division of Labor Between Courts and Arbitrators with Respect to Waiver*, 2006 J. Disp. Resol. 305, 316-17. But the majority of courts have reached a contrary conclusion where, as here, the waiver alleged is litigation-conduct waiver. For multiple reasons, we hold that litigation-conduct waiver should be an issue for the court.

¶27 We look first to the controlling statute, the uniform arbitration act (UAA), codified at chapter 7.04A RCW. The UAA reflects extensive textual changes and additions to the statutory framework it replaced, the Washington arbitration act (WAA), former chapter 7.04 RCW, which was repealed by Laws of 2005, ch. 433, § 50. The UAA was promulgated in 2000 by the National Conference of Commissioners on Uniform State Laws (Conference). The Con-

ference developed it as a recommended substitute and replacement for the 1956 version of the UAA, to "address many issues which arise in modern arbitration cases." Unif. Arbitration Act (2000), 7 Pt. 1A U.L.A. 1, prefatory note at 2 (2009). According to the prefatory note, one of the issues on which the earlier uniform act had not provided guidance was "who decides the arbitrability of a dispute and by what criteria." *Id.*

¶28 Two provisions of the UAA touch on the respective authority of the court and the arbitrator. RCW 7.04A.070(1) provides that when presented with a motion to compel arbitration that is opposed, the court "shall proceed summarily to decide the issue." It further provides, "Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate." RCW 7.04A.070(1). This language is distinguishable from former RCW 7.04.040(2); the former statute provided that in the event of dispute, the trial court should proceed to trial of the issue and "[i]f upon such trial the court finds that no written agreement providing for arbitration was made or that there is no default in proceeding thereunder, the motion to compel arbitration shall be denied."

¶29 A second provision, RCW 7.04A.060, provides at its subsections (2) and (3) that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate" and "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." The WAA contained no equivalent provisions.

¶30 Our Supreme Court recently approved consulting the official comments to the UAA at the outset of construing its provisions, "because 'RCW 7.04A.901 requires that [i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.'" *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 456-57,

268 P.3d 917 (2012) (alteration in original) (internal quotation marks omitted) (quoting *Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 224 P.3d 818 (2009)). In deciding the issue presented in *Townsend*, the Supreme Court relied, as had the Court of Appeals, on the comment by the UAA drafters that the UAA's provisions allocating authority to decide arbitrability issues (subsections (b) and (c) of section 6 of the UAA, codified as RCW 7.04A.060(2) and (3)) are intended to

> " 'incorporate the holdings of the vast majority of state courts and the law that has developed under the FAA [Federal Arbitration Act, 9 USC §§ 1-14] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, *i.e.*, whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' "

*Id.* at 457 (alteration in original) (quoting *Townsend*, 153 Wn. App. at 879 (quoting UAA § 6 cmt. 2, 7 U.L.A. 24 (2005))).

¶31 Even more to the point in this case, the UAA drafters' comments to section 6 go on to say:

> Waiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause. . . . For instance, where a plaintiff brings an action against a defendant in court, engages in extensive discovery and then attempts to dismiss the lawsuit on the grounds of an arbitration clause, a defendant might challenge the dismissal on the grounds that the plaintiff has waived any right to use of the arbitration clause. Allowing the court to decide this issue of arbitrability comports with the separability doctrine because in most instances waiver concerns only the arbitration clause itself and not an attack on the underlying contract. It is also a matter of judicial economy to require that a party, who pursues an action in a court proceeding but later claims arbitrability, be held to a decision of the court on waiver.

UAA § 6 cmt. 5, 7 Pt. 1A U.L.A. 28 (2009) (citation omitted). The comment cautions that because of the public policy favoring arbitration, a court normally will find a waiver of a right to arbitrate only where a party claiming waiver meets the burden of proving that the waiver has caused prejudice. *Id.* (citing *Sedillo v. Campbell*, 5 S.W.3d 824, 826-27 (Tex. App. 1999)).

¶32 The weight of both federal authority under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and state authority under the current and former versions of the UAA treat litigation-conduct waiver as an issue for the court rather than an issue for the arbitrator, despite the United States Supreme Court's including waiver in its list of arbitrable procedural issues in *Howsam*—a listing that a number of courts and commentators have characterized as dicta, given that only waiver by delay was at issue in *Howsam. See Perry Homes v. Cull*, 258 S.W.3d 580, 587-89 (Tex. 2008) (collecting pre-*Howsam* and post-*Howsam* cases), *cert. denied*, 555 U.S. 1103 (2009); Joel E. Smith, Annotation, *Defendant's Participation in Action as Waiver of Right to Arbitration of Dispute Involved Therein*, 98 A.L.R.3D 767 (1980) (collecting federal and state cases in which issue was decided by the court); LeFevre, *supra*, at 311-12; *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 230 (E.D.N.Y. 2009) (discussing characterizations of *Howsam*'s reference as dicta and concluding that "courts should generally resolve issues of litigation-conduct waiver").

¶33 Summarizing the several rationales offered by courts for having the court decide the issue of litigation-conduct waiver, the Supreme Court of Kentucky has observed:

Questions of litigation-conduct waiver are best resolved by a court that "has inherent power to control its docket and to prevent abuse in its proceedings (i.e. forum shopping)," which has "more expertise in recognizing such abuses, and in controlling . . . them," and which could most efficiently and economi-

cally decide the issue as "where the issue is waiver due to litigation activity, by its nature the possibility of litigation remains, and referring the question to an arbitrator would be an additional, unnecessary step."

*Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 551-52 (Ky. 2008) (alteration in original) (footnote omitted) (quoting LeFevre, *supra*, at 313-14).

¶34 No reported Washington case has squarely presented the issue of whether litigation-conduct waiver should be an issue for the arbitrator. Instead—and notably—Washington decisions have assumed the issue is one for the court, including under the current version of the UAA. *See, e.g., Otis Hous. Ass'n*, 165 Wn.2d at 588 (trial court concluded that party waived arbitration by litigation conduct), 594 (Stephens, J., dissenting) (although disagreeing with trial court's rationale for dismissal, "[t]he trial court could have properly considered whether the right to arbitrate had been waived"); *Verbeek Props.*, 159 Wn. App. 82 (although holding that two procedural issues were for the arbitrator, court addressed and resolved issues of whether litigation conduct had been inconsistent with an intent to arbitrate); *Ives v. Ramsden*, 142 Wn. App. 369, 383, 174 P.3d 1231 (2008) (issue of waiver or arbitration addressed by the court); *Harting v. Barton*, 101 Wn. App. 954, 962, 6 P.3d 91 (2000) (issue of waiver of ADR addressed by the court), *review denied*, 142 Wn.2d 1019 (2001).

¶35 The trial court properly recognized that it should decide the issue of litigation-conduct waiver.

II

¶36 We next address River House's argument that Integrus did not meet the burden required to establish waiver of a right to arbitration.

¶37 Review of an order denying a motion to compel arbitration is de novo. *Otis Hous. Ass'n*, 165 Wn.2d at 586-87; *Steele v. Lundgren*, 85 Wn. App. 845, 850, 935 P.2d

671 (review of waiver determination is de novo), *review denied*, 133 Wn.2d 1014 (1997). The party opposing arbitration bears the burden of showing that the arbitration clause is inapplicable or unenforceable. *Otis Hous. Ass'n*, 165 Wn.2d at 587.

¶38 Washington courts have consistently recognized that contractual rights to mediation and arbitration may be waived. *See id.* (collecting cases). Waiver, when used in this context, has been defined as the " 'voluntary and intentional relinquishment of a known right.' " *Ives*, 142 Wn. App. at 383 (quoting *Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*, 28 Wn. App. 59, 61, 621 P.2d 791 (1980)). The right to arbitrate is waived by " 'conduct inconsistent with any other intention but to forego [sic] [the] right.' " *Verbeek Props.*, 159 Wn. App. at 87 (quoting *Lake Wash.*, 28 Wn. App. at 62); *see also Otis Hous. Ass'n*, 165 Wn.2d at 588. At the same time, " 'a party to a lawsuit who claims the right to arbitration must take some action to enforce that right within a reasonable time.' " *Otis Hous. Ass'n*, 165 Wn.2d at 588 (quoting *Lake Wash.*, 28 Wn. App. at 64).

¶39 In applying these standards, "waiver of a contractual right to arbitration is disfavored," and a party seeking to prove waiver has a " 'heavy burden of proof.' " *Steele*, 85 Wn. App. at 852 (internal quotation mark omitted) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)); *see also Verbeek Props.*, 159 Wn. App. at 87. The determination of whether waiver has occurred " 'necessarily depends upon the facts of the particular case and is not susceptible to bright line rules.' " *Steele*, 85 Wn. App. at 853 (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)); *see also Lake Wash.*, 28 Wn. App. at 61 ("The requirements for waiver vary with the circumstances.").

¶40 In determining that River House waived its right to arbitration, the trial court cited the following facts as sufficient: River House, as the plaintiff, initiated suit in

superior court rather than filing for mediation and arbitration; it participated in the discovery process and contested Integrus's motion to compel rather than bringing a motion to stay; it supplied a trial witness list and participated in a case scheduling conference in September 2010 that set trial for July 2011; and it substantially delayed in bringing its motion to compel mediation and arbitration, prejudicing Integrus, which was preparing for trial and was entitled to the discovery ordered by the court.

¶41 In arguing that the trial court wrongly found waiver, River House places its greatest reliance on the holding of Washington cases that a waiver cannot be found absent conduct "inconsistent with any other intention but to forego [sic] [the] right." *Lake Wash.*, 28 Wn. App. at 62. It construes this principle as requiring the trial court to examine a party's entire course of conduct for "consistency"; should the court find evidence of a party's desire to arbitrate or equivocation at any point, then, it suggests, inference of voluntary and intentional waiver is too doubtful. This misapprehends what the trial court looks for in examining for inconsistency. The party arguing for waiver is not required to show that its adversary has never mentioned arbitration or equivocated about the process to be followed. It need show only that as events unfolded, the party's conduct reached a point where it was inconsistent with any other intention but to forgo the right to arbitrate.

¶42 Integrus presented such evidence here. Whatever River House's equivocation early in the process, by March 2011 it had addressed its concerns about a time bar by filing a lawsuit rather than filing a demand for arbitration;[4] it had attended an in-person status conference with

---

[4] For a party concerned about limitations periods, River House's right to arbitrate might have become time barred. The arbitration provision in the parties' contract required that a demand be served and filed with the arbitrator and that "a demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by

the assigned judge at which it agreed to a trial schedule and a trial date with no mention of arbitration; it had exchanged identification of trial witnesses with Integrus; it had participated not only in formal discovery, but in motion practice over its compliance with discovery to the point of exposing itself to sanctions; and at the March 18 hearing it had represented to the court that it was preparing for trial, again making no mention of arbitration. It was, by then, within eight weeks of the discovery cutoff and four months of the trial date. This amounts to conduct inconsistent with any other intention but to forgo arbitration. By this point, River House had "elect[ed] to litigate instead of arbitrate." *Otis Hous. Ass'n*, 165 Wn.2d at 588.

## III

¶43 Finally, River House argues that Integrus should be precluded from arguing that it waived its contractual right to mediation and arbitration under a theory of equitable estoppel.[5]

¶44 Equitable estoppel is based on the notion that " 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.' " *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993) (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975)). The elements of equitable estoppel are " '(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement or admission, and

the applicable statute of limitations." CP at 258 (§§ 7.2.2, 7.2.3). According to the record, no arbitration demand was filed. While the ultimate issue of limitations in arbitration would have been for the arbitrator, the fact that River House had so far not filed a demand was some evidence it had elected litigation.

[5] Integrus again argues that RAP 2.5(a) precludes review. We respond as before; River House raised the issue in moving for reconsideration, it was briefed by Integrus, and it was considered and resolved by the court. RAP 2.5(a) does not apply.

(3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.' " *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000) (alteration in original) (quoting *Bd. of Regents of Univ. of Wash. v. City of Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)). Where both parties can determine the law and have knowledge of the underlying facts, estoppel cannot lie. *Id.* Equitable estoppel must be shown by clear, cogent, and convincing evidence. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994).

¶45 Here, in response to River House's request for an agreement that each side's obligations were preserved but tolled, Integrus refused. It proposed mediation on different terms: that it would mediate only after it received sufficient discovery to ensure a meaningful mediation process. This was fundamentally different from the mediation provided for by the parties' existing agreement, which provided that mediation was "a condition precedent to arbitration or the institution of legal or equitable proceedings." CP at 257 (§ 7.1.1). Integrus reiterated its willingness to mediate the case during a subsequent hearing occurring on April 27, 2011, but here again, the timing of mediation under discussion belied any suggestion that Integrus was agreeing to mediate on any but its own terms. Integrus never agreed to arbitrate in any of its communications with River House. It signaled clearly in its September 8, 2010 letter that it disavowed any intention to arbitrate inasmuch as River House had never filed an arbitration claim.

¶46 The scope of this interlocutory appeal is limited to the trial court's refusal to compel arbitration. Accordingly, the only relevant estoppel claim is River House's contention that Integrus admitted, stated, or acted in a manner implying that it would mediate or arbitrate the parties' disputes in compliance with their contract, and that River House reasonably relied, with resulting injury. River House has presented no evidence that Integrus led it to

believe that it would mediate or arbitrate in compliance with the ADR process called for in the parties' agreement. A contention that Integrus led River House to believe that it would engage in some other mediation process is beyond the scope of this appeal.

¶47 Equitable estoppel does not foreclose Integrus's argument that River House's rights to mediate and arbitrate were waived.

¶48 We affirm.

KULIK, C.J., and SWEENEY, J., concur.