IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BRIALLE ENGELHART,

                Respondent,

       v.

WREN HANSEN,

                Appellant.

No. 86080-1-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — Wren Hansen, representing himself, appeals multiple trial court orders entered in proceedings related to the termination of his committed intimate relationship (CIR) with Brialle Engelhart. Hansen makes numerous assignments of error, including the consolidation of the domestic violence protection order (DVPO) and parenting plan actions, evidentiary decisions arising during trial, procedural matters, and post-trial motions. We affirm the trial court's orders but deny Engelhart's request for attorney fees on appeal.

I.     BACKGROUND

Hansen and Engelhart were in a CIR and are the parents of two children, born in 2018 and 2020.[1] The parties separated on March 1, 2021, when Engelhart petitioned for a DVPO against Hansen in King County Superior Court. In the petition, Engelhart alleged

---

[1] Engelhart's complaint to end the parties' CIR was resolved by agreement prior to trial.

a pattern of physical, sexual, emotional, and cannabis abuse, often in the presence of the children. She also expressed concern regarding Hansen's interest in pornography depicting young women and sexual behaviors towards his 11-year old daughter from his previous marriage. Hansen denied the allegations and claimed that Engelhart was controlling and abusive. The matter was referred to Family Court Services (FCS), which issued a risk assessment report recommending that the DVPO be denied.

On April 5, 2021, Engelhart petitioned under a separate cause number in King County Superior Court to establish a parenting plan, to issue a DVPO and a restraining order, and for the payment of her attorney fees and costs. Hansen opposed Engelhart's requests and sought unsupervised residential time with the children.

Following a hearing on July 8, 2021, the court issued a one-year DVPO granting Engelhart temporary custody and requiring Hansen's visits with the children to be supervised at his expense. The DVPO required Hansen to participate in a certified domestic violence (DV) perpetrator's treatment program approved in advance by Engelhart and a "DV Dads" program. The order specified that Hansen was to supply the treatment provider with a copy of all of Engelhart's pleadings in the matter. The DVPO was subsequently renewed to extend through the time of trial.

In February 2022, Hansen underwent a domestic violence evaluation at Anger Control Treatment & Therapies (ACT&T). The evaluation identified Hansen as high risk, recommended domestic violence intervention treatment (DVIT) at level 3 (which requires treatment for a minimum of 52 weeks), and required that he undergo a psychosexual/sexual deviancy evaluation. In a written response to ACT&T, Hansen asserted that the evaluation contained "defamatory information that is proven to be false"

2

and indicated that he would notify the court "in an effort to avoid further litigation." Consequently, ACT&T declined to offer Hansen treatment due to Hansen's "level of distrust" and "subtle coercive threats" of litigation.

Hansen did not enter treatment with a preapproved DVIT provider as per the DVPO. Instead, in September 2022, he self-selected La Esperanza Health Counseling Services as his provider and obtained a new evaluation. In contrast to ACT&T's recommendation that Hansen participate in level 3 treatment (52 weeks), La Esperanza recommended level 1 treatment (6 months). Hansen commenced treatment at La Esperanza with Alvin Currie in November 2022 and asked the court to remove supervised visitation.

In a temporary family law order entered on November 22, 2022, a superior court commissioner found that Hansen failed to meet the treatment requirements under the DVPO, that he had no basis to seek another evaluation, and that it is appropriate to require him to enter a new treatment program using the ACT&T evaluation. On the same day, the trial court entered a temporary parenting plan designating Engelhart as the primary residential parent and limiting Hansen's contact with the children under RCW 26.09.191. As part of the temporary parenting plan, the court ordered Hansen to start and comply with level 3 DVIT as recommended in the ACT&T evaluation no later than 45 days after entry of the order. The court specified that treatment shall be completed at Northwest Evaluation Center, Northwest Family Life, or Counseling Services of Washington and that the provider must be given a copy of the ACT&T evaluation, Engelhart's declarations in the parenting plan action, and the temporary parenting plan order. The court further specified that if Hansen did not follow these requirements, his

visitation with the children would be suspended pending further order of the court.

Engelhart's petition to end the CIR was resolved via a partial CR2A agreement entered prior to trial. The CR2A disposed of the parties' joint property and included a $180,000 transfer payment from Engelhart to Hansen. After Engelhart paid $82,500 to Hansen, he moved to enforce the CR2A agreement to receive the balance. The court granted Engelhart's request to deposit the remaining funds into the clerk's registry pending entry of the parenting plan.

In February 2023, the action to establish a parenting plan went to a 10-day trial with 10 witnesses and 51 exhibits. Engelhart testified at length regarding the events that led her to end the relationship and petition for a DVPO. Hansen's former wife, Leslee Stockton, testified that Hansen physically and sexually assaulted her, that he smoked marijuana daily, and that he had accessed a website called "Literotica" that featured stories about child rape. Chloe Carreau, who was a friend of Hansen and Stockton, testified that Hansen had sexually assaulted her and that she saw Hansen assault Stockton.

Hansen testified that he was "shocked" by Engelhart's allegations. He asserted that financial hardship had prevented him from entering into court-ordered treatment. Hansen admitted that he had not obtained permission to obtain treatment from La Esperanza, but claimed that he did so because no other providers were available. He also insisted that he had informed Currie of the ACT&T evaluation during his first interview. However, Currie testified that he was unaware of the ACT&T evaluation or the court's orders in this matter until December 2022, when Engelhart's attorney contacted him with this information. Currie subsequently revised Hansen's treatment to level 3, as

4

recommended by ACT&T.

On August 9, 2023, the court entered detailed findings of fact and conclusions of law, a final parenting plan, restraining order, and DVPO. The court found that Engelhart's testimony was credible and that Stockton and Carreau offered credible testimony that corroborated Engelhart's. In contrast, the court found that Hansen's testimony was "evasive, slippery, not forthcoming, and not credible on many issues," that his excuses for not following the court's orders were not credible, and that his evasiveness arose from an attempt to manipulate the process and circumvent the court's requirements. The court further specified that Hansen's testimony on financial issues was evasive and not credible, that he failed to disclose all financial documents, and that Hansen had "created a nonsensical financial maze that he could not explain."

Regarding DVIT treatment, the court found that Hansen failed to comply with the court's orders by self-selecting La Esperanza and misleading them to start him on the lowest treatment level. The court refused to give credit to Hansen for his work at La Esperanza because, even at trial, Hansen did not take accountability for his actions and behaviors. Additionally, the court found that Hansen had resisted participation in the psychosexual forensic evaluation recommended by ACT&T, that he failed to comply with ACT&T's recommendation to abstain from marijuana, and that he "tried to manipulate and circumvent the treatment requirements" by submitting unobserved and/or diluted urinalysis test results.

The court placed parenting restrictions on Hansen under RCW 26.09.191 based on domestic violence, granted Engelhart sole decisionmaking authority, and suspended Hansen's visitation with the children pending full compliance with the court's orders. The

court required Hansen to comply with the ACT&T treatment recommendations; enroll in a new DVIT program with one of three alternative providers; obtain a forensic psychosexual/sexual deviancy evaluation with one of three alternative providers; obtain a substance abuse evaluation with one of three alternative providers; complete a DV Dads program; and follow all treatment recommendations. The court specified that Hansen must provide all evaluators and providers with a complete copy of the ACT&T evaluation, the final parenting plan, the findings of fact and conclusions of law, and any other requested documentation, and to submit confirmation of receipt and review of these materials to the court. The court also reissued the DVPO for two years and indicated that it would consolidate the DVPO cause of action with the parenting plan cause of action.

The court awarded Engelhart $50,000 in fees based on a finding that Hansen had been intransigent "throughout the proceedings," which "caused the proceedings [to be] unduly difficult and costly" to Engelhart. On October 27, 2023, the court issued an order disbursing the CR2A funds held in the court registry by releasing $51,117.92 to Engelhart pursuant to its final orders and disbursing the remaining funds to Hansen.

On August 21, 2023, Hansen filed a motion for reconsideration, arguing that a psychosexual evaluation with Salish Community Services (SCS) and a chemical dependency evaluation from 2nd Chance Recovery, both of which he obtained after close of trial, should have changed its outcome. The trial court declined to consider the new evaluations or to revisit its credibility determinations and denied the motion. Hansen subsequently proceeded pro se.

On October 31, 2023, Hansen moved for the court to approve a different DVIT provider on the grounds that none of the ordered providers were available and the order

6

disallowing La Esperanza had prejudiced his ability to reunite with his children. The court denied the motion.

On November 13, 2023, Hansen moved for the court to accept the psychosexual evaluation, arguing that it addresses the concerns outlined in the ACT&T evaluation and that requiring a new evaluation would impose an undue financial and emotional burden. The court denied the motion on procedural and substantive grounds and granted Engelhart's request for an award of attorney fees.

Hansen appealed.[2]

On September 30, 2024, Hansen moved to supplement the record on appeal under RAP 9.11. On October 14, 2024, a commissioner of this court denied Hansen's motion. Hansen moved to modify the commissioner's ruling. Engelhart opposed the motion and requested an award of attorney fees for time spent responding to it. The motion was passed to the panel considering the appeal.

On October 30, 2023, the trial court awarded Engelhart $6,107.50 in attorney fees on revision in connection with renewing the DVPO after a commissioner initially denied fees. On August 8, 2024, Hansen moved to stay enforcement of the fee award. The following day, Hansen filed a "status update notice" seeking to update this court on trial court proceedings and associated facts that postdate this court's acceptance of review. In response, Engelhart moved to strike the status update and for attorney fees as sanctions for having to respond to Hansen's motion. On August 15, 2024, a commissioner of this court denied Hansen's request for stay of enforcement without

---

[2] On February 8, 2024, a commissioner of this court accepted Hansen's amended notice of appeal, but ruled that the parties may argue the scope of appeal in briefing on the merits.

prejudice to his ability to seek relief in the trial court and passed Engelhart's request to strike Hansen's status report and for sanctions to the panel considering the appeal.

## II.  ANALYSIS

### A.  Motions Referred to the Panel

#### 1.  Motion to Supplement the Record

Hansen seeks to supplement the record with two affidavits showing e-mail communications he participated in dated September 12, 2022 and June 9, 2023 and a motion for reconsideration.  Hansen argues that these materials demonstrate that he complied with the trial court's directive to provide necessary documentation to evaluators, contrary to the trial court's rulings.

RAP 9.11 governs the acceptance of additional evidence on review.  Generally, we will not accept additional evidence unless all six requirements of RAP 9.11(a) are met. Harbison v. Garden Valley Outfitters, Inc., 69 Wn. App. 590, 593–94, 849 P.2d 669 (1993).  These criteria are: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.  RAP 9.11(a); State v. Ziegler, 114 Wn.2d 533, 541, 789 P.2d 79 (1990).

Hansen has not met the six required criteria.  He acknowledges that the e-mail communications predate the final order from which he appeals and that these materials

were filed in the trial court in conjunction with a motion for reconsideration that was never brought. Hansen claims that his lack of confidence in the trial court equitably excuses him from bringing the motion, but as the commissioner properly noted, "[t]his Court does not excuse a party from the obligation of first seeking the trial court's decision on available evidence before presenting it to this Court as a basis to demonstrate error in the trial court's decision simply because that party made a strategic or self-serving choice based on feelings of confidence or the lack thereof." Moreover, Hansen already sought relief in the trial court through a previous motion for reconsideration, which was denied. We deny Hansen's motion to modify the commissioner's ruling denying his motion to supplement the record.

   2. <u>Motion to Strike and Impose Sanctions</u>

Engelhart argues that Hansen's status update should be stricken as an improper attempt to supplement the record on appeal. Hansen contends that his status update is "essential" due to the "ongoing and complex nature of the trial court proceedings" and that it helps this court "fully understand the case's scope." We agree with Engelhart. This court did not request such an update, and it contains no information that affects our review of the trial court's orders on appeal. To the extent that the status update seeks to supplement the record with new evidence, we note that Hansen made no attempt to comply with RAP 9.11. Accordingly, Engelhart's request to strike the status update report is granted.

Engelhart also moved for an award of attorney fees incurred in responding to both of these motions. For reasons discussed more fully below, we deny Engelhart's request for attorney fees.

B. Legal Principles and Standards of Review

As a preliminary matter, we note that pro se appellants are bound by the same procedural rules and substantive laws as attorneys. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006). Nevertheless, the Rules of Appellate Procedure are to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). Accordingly, an appellate court may exercise its discretion and consider cases on their merits, regardless of technical violations of the rules. State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). This discretion should be exercised unless compelling reasons exist not to do so. If the nature of the appeal is clear, the relevant issues are argued with citation to authority, and the respondent is not prejudiced, the court should decide the case on its merits.[3] Id.

We review a trial court's ruling on provisions of a parenting plan for abuse of discretion. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). The court's decision to grant a DVPO is also reviewed for abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). A trial court abuses its discretion

---

[3] Engelhart asserts that sanctions are warranted because Hansen's opening brief violated RAP 10.3(a)(5), which requires that "[r]eference to the record must be included for each factual statement." Hansen acknowledges the citation omissions but argues that sanctions are unwarranted because the omissions were unintentional and did not hinder the appeal. This court may, sua sponte or on the motion of a party, order a brief that fails to comply with the RAPs to be returned or corrected or struck. RAP 10.7. This court ordinarily imposes sanctions on a party or counsel for a party who files a noncompliant brief. RAP 10.7. Here, Engelhart did not move to strike Hansen's brief for violating RAP 10.3(a)(5), and the deficiency did not significantly hinder our review. Thus, while Hansen's brief technically violated RAP 10.3(a)(5), we decline to impose sanctions.

when its "decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We review a trial court's findings of fact for substantial evidence, which is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Where, as here, the trial court has weighed the evidence, we defer to the trial court's determinations regarding the persuasiveness of the evidence, witness credibility, and conflicting testimony. In re Vulnerable Adult Pet. for Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). Unchallenged findings of fact are verities on appeal. In re Marriage of Rounds, 4 Wn. App. 2d 801, 804, 423 P.3d 895 (2018).

Hansen makes 14 assignments of error related to the parenting plan and DVPO orders. Broadly speaking, Hansen challenges the trial court's decision to consolidate the DVPO and parenting plan actions; its findings or decisions on evidentiary matters arising during trial; and post-trial and procedural matters. We address each category in turn.

### C. Consolidation

Hansen argues that the DVPO should be vacated because the trial court erred and violated his due process rights in consolidating the parenting plan and DVPO action at the conclusion of trial. We disagree.

"CR 42(a) allows a court to consolidate actions which involve a common question of law or fact. Consolidation is within the discretion of the trial court and will be reversed only upon a showing of abuse and that the moving party was prejudiced." In re Marriage of Angelo, 142 Wn. App. 622, 639, 175 P.3d 1096 (2008) (quoting Leader Nat'l Ins. Co. v. Torres, 51 Wn. App. 136, 142, 751 P.2d 1252 (1988)). Here, the parenting plan and

DVPO plainly involved overlapping issues of law and fact. Moreover, RCW 7.105.550(1)(b) expressly allows a court to consolidate a parenting plan action with a previously issued DVPO. Hansen contends the court's failure to consolidate the matters before or during trial denied him a meaningful opportunity to contest Engelhart's domestic violence claims during the trial. But the parenting plan action arose from and turned on Engelhart's domestic violation allegations, which were litigated extensively during trial.

Hansen's reliance on SEIU Healthcare 775NW v. Dep't of Social & Health Services, 193 Wn. App. 377, 396, 377 P.3d 214 (2016), to support this argument is misplaced. SEIU held that the trial court did not abuse its discretion in consolidating a preliminary injunction hearing with a trial on the merits under CR 65(a)(2). 193 Wn. App. at 397. SEIU has no bearing on the matter at hand.

D. Evidentiary issues at trial

1. Intransigence

Hansen argues that substantial evidence does not support the court's finding that he was intransigent. He contends that the fee award was "disproportionate" because the court ignored Engelhart's intransigence. "Awards of attorney fees based upon the intransigence of one party have been granted when the party engaged in 'foot-dragging' and 'obstruction' . . . or simply when one party made the trial unduly difficult and increased legal costs by his or her actions." Katare, 175 Wn.2d at 42 (quoting In re Marriage of Greenlee, 65 Wn. App. 703 708, 829 P.2d 1120 (1992)). Fee awards based on intransigence are reviewed for abuse of discretion. In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

Sufficient evidence supports the intransigence finding. Hansen's contentious

response to the ACT&T evaluation caused ACT&T to decline treatment. Hansen subsequently failed to comply with court-ordered DV treatment requirements. When he finally did enter treatment, he self-selected an unapproved provider in violation of the court's orders and misled the provider by failing to provide the ACT&T evaluation. Engelhart had to renew the DVPO prior to trial because of the delays. By the time of trial, Hansen still had not completed DV treatment with an approved provider. Hansen also failed to turn over all required financial documents.

Hansen asks us to reexamine the evidence and reach a different conclusion. But "[t]his court does not substitute its judgment for that of the trial court or reweigh the evidence or the credibility of the witnesses." In re Marriage of Weaver, 20 Wn. App. 2d 388, 413, 505 P.3d 560 (2021). The court did not err in finding Hansen intransigent and awarding fees on that basis.

2. Temporary parenting plan

In his fourth assignment of error, Hansen asserts that the trial court erred in finding him "out of compliance with the November 22, 2022 [temporary family law order] and the domestic violence intervention treatment (DVIT) requirements issued in the parties' temporary parenting plan, and ordering the appellant to enroll with DVIT providers unavailable to enroll appellant in their programs[.]" But the temporary parenting plan has been replaced by the final parenting plan. A final judgment renders the propriety of a temporary order moot. State ex rel. Carroll v. Simmons, 61 Wn.2d 146, 149, 377 P.2d 421 (1962); see also Ferry County Title & Escrow Co. v. Fogle's Garage, Inc., 4 Wn. App. 874, 881, 484 P.2d 458 (1971) (propriety of temporary restraining order rendered moot by final judgment containing permanent injunction). An issue is moot if a court can no

13

longer provide effective relief. Maldonado v. Maldonado, 197 Wn. App. 779, 790, 391 P.3d 546 (2017). This court will generally not review issues that are moot. In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004). Hansen challenges an order that is no longer in effect, so there is no effective relief that this court can provide.

In reply, Hansen asserts that he is not actually challenging the November 2022 temporary parenting plan, but rather the court's finding that he did not comply with DVIT requirements. He contends that all three court-ordered DVIT provider options were unavailable and that he made a good-faith effort to comply by enrolling with La Esperanza.

Substantial evidence supports the court's findings regarding Hansen's failure to comply with DVIT requirements. A fair-minded person reasonably could conclude that Hansen could have, but did not, (a) follow ACT&T's recommendations instead of making "subtle coercive threats" of litigation; (b) follow the instructions in the DVPO for complying with court-ordered DVIT; and (c) provide credible evidence that he could not enroll in treatment with one of the providers named in the November 2022 temporary parenting plan. Katare, 175 Wn.2d at 35. Instead, he self-selected La Esperanza. Moreover, Currie confirmed that Hansen did not provide him with a copy of the ACT&T evaluation at intake, as the temporary parenting plan required. A fair-minded person reasonably could conclude that, because Hansen misled La Esperanza, they started him on the lowest level of treatment, contrary to the ACT&T evaluation.

Hansen points to evidence in the record indicating that all three court-ordered provider options were unavailable. But these communications took place in August 2023, after the trial court issued its final orders. The court considered Hansen's claims that he could not enter treatment sooner and found them to be not credible. We do not review

14

credibility determinations on appeal because "trial judges and court commissioners routinely hear family law matters" and "are better equipped to make credibility determinations." In re Marriage of Rideout, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003). Hansen also relies on new evidence submitted in his motion to supplement the record under RAP 9.11, but his motion was denied. The court did not err in finding Hansen out of compliance with DVIT treatment requirements.

3. Credibility

Hansen argues that the court erred in finding that Leslee Stockton and Chloe Carreau were credible. He claims that their testimony was inconsistent and potentially perjurious and that the court failed to sufficiently scrutinize their reliability or motives to testify against him. Again, credibility determinations cannot be reviewed on appeal. In re Marriage of Eklund, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). He further contends that the court erred in failing to account for the fact that Stockton's petition for DVPO against him was denied. But the court had discretion to assign weight to this evidence as it saw fit. See RCW 26.09.191(2)(n) ("The weight given to the existence of a protection order issued under chapter 7.105 RCW or former chapter 26.50 RCW as to domestic violence is within the discretion of the court."). And we will not reweigh the evidence. Weaver, 20 Wn. App. 2d at 413.

4. Domestic Violence Treatment

Hansen argues that the court erred in invalidating his participation in eight months of DVIT with La Esperanza. He points out that La Esperanza is a state-certified DVIT provider and that there were no findings of misconduct by La Esperanza that would warrant disregarding the completed treatment. However, as discussed above, Hansen

15

self-selected La Esperanza in violation of requirements imposed in the DVPO and temporary parenting plan, and the trial court entered detailed findings explaining its decision. See RCW 26.09.003 (finding that judicial officers addressing domestic violence treatment needs of the parties in dissolution matters "should have the discretion and flexibility to assess each case based on the merits of the individual cases before them" and to "tailor individualized resolutions"). Additionally, the court expressed concern with La Esperanza's "relaxed approach" towards Hansen's "non-compliance and lack of follow through" with its treatment rules and noted that its treatment had not been effective given Hansen's lack of insight into his actions and behaviors. The court did not abuse its discretion in refusing to credit Hansen's participation.

Hansen argues that the court erred by imposing unreasonable treatment requirements. His reliance on Littlefield is misplaced. Littlefield held that the trial court had no authority to place geographic restrictions on the child's primary residential parent and that a court may bar relocation only if the harm would exceed "the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage." 133 Wn.2d at 54-55. Littlefield is inapplicable to the DVIT requirements at issue in this case.

5. Financial Hardship

Hansen argues that the trial court erred in rejecting his financial hardship claim. He contends that the court did not adequately evaluate his financial hardship and that it ignored critical evidence of his inability to afford court-ordered treatment and supervised visits with the children.

Substantial evidence supports the court's financial hardship findings. After

carefully considering Hansen's evidence and explanations, the court found that Hansen failed to provide complete financial records, that he could not credibly explain his refusal to do so, and that he had "created a nonsensical financial maze that he could not clearly and credibly explain" as a "self-serving" means to conceal his full income and assets. The court noted that Hansen testified that he had income from driving for Uber[4], but that he "testified to a convoluted scheme where he said that he did not work for Uber but that he worked for his own company which worked with Uber" and then failed to provide all necessary records to show the company's income. Hansen points to financial evidence that he did provide, but he fails to refute the court's findings. We decline Hansen's invitation to reweigh the evidence and make a new determination.

6. Restraining order

Hansen argues that the court abused its discretion by issuing a new restraining order in the final parenting plan without adequate legal justification, thereby violating his due process rights. We disagree.

Courts have broad statutory and equitable authority to impose and fashion restraining orders in dissolution proceedings. RCW 26.09.050(1); Blackmon v. Blackmon, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010). We review a trial court's decision whether to impose a restraining order for abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). Substantial evidence of a history of domestic violence is sufficient to support issuing a restraining order. See, e.g., In re Marriage of Mishko, 23 Wn. App. 2d 571, 578, 519 P.3d 240 (2022). Here, substantial evidence supports the court's decision to enter a restraining order. The court found that Engelhart's

---

[4] Uber Technologies, Inc.

testimony regarding Hansen's sexual and physical abuse was credible, that it was corroborated by that of Stockton and Carreau, and that Hansen's denials were not credible.

Hansen likens his case to Freeman, but that case is distinguishable.[5]  In Freeman, the court reversed an order denying the former husband's motion to modify a permanent protection order where the evidence did not support a reasonable present likelihood that he would resume acts of domestic violence against his former wife.  169 Wn.2d at 675-76.  Here, substantial evidence supports the court's decision to enter a restraining order.

E.  Post-Trial and Procedural Matters

1.  New evaluations

Hansen argues that the trial court erred in denying his post-trial motions to consider the psychosexual evaluation and drug and alcohol assessment he obtained after evidence closed, including his motion for reconsideration and subsequent motion to accept the psychosexual evaluation.

CR 59 sets out the procedure and standards for motions for reconsideration. We consider a trial court's "denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."  River House Dev., Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 231, 272 P.3d 289 (2012).  "The decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion."  Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).

The court did not abuse its discretion in declining to consider Hansen's proffered

---

[5] Although Hansen provides an incorrect case citation, his intentions are apparent.

post-trial evidence. First, the evaluations could have been obtained sooner. Hansen had notice since February 2022 that the ACT&T evaluation recommended such evaluations and the court told him where to seek them. Instead, he self-selected non-compliant providers and did not obtain a psychosexual evaluation until shortly after the court entered its final orders in August 2023. To the extent Hansen attributes the delay to financial hardship, the court found this claim to be not credible. Hansen obtained a chemical dependency evaluation after the close of trial in April 2023. But Hansen admitted to using marijuana while in treatment at La Esperanza, and the court had discretion to order him to obtain a new drug and alcohol assessment.

Moreover, the evaluations did not comply with the court's orders regarding acceptable treatment providers. Neither evaluation was completed by any of the providers the trial court ordered Hansen to utilize. Significantly, the SCS psychosexual evaluation only shows that the FCS report was reviewed by the evaluator, despite the fact that the court expressly ordered Hansen to provide the ACT&T evaluation and other documents. Hansen can show no prejudice arising from the court's rejection of evidence that would not change the result of the trial. Lastly, as the trial court correctly noted, Hansen's motion to accept the evaluation amounted to a second motion for reconsideration that was unauthorized and procedurally untimely.

2. Departure from temporary orders

Hansen claims that the court abused its discretion in departing from its temporary orders "without explanation or supporting description." But courts may depart from temporary orders based on evidence presented at trial "unprejudiced by temporary orders." In re Marriage of Abbess, 23 Wn. App. 2d 479, 488, 516 P.3d 443 (2022). The

court issued detailed findings of fact and conclusions of law that thoroughly explained the basis for its rulings. The court did not abuse its discretion in doing so.

### 3. Custodial interference

Hansen asserts that Engelhart engaged in custodial interference by unilaterally suspending visits without authorization. Hansen is incorrect. The November 2022 temporary parenting plan specified that noncompliance would result in the suspension of visitation pending further order of the court. As previously discussed, Hansen did not comply. In any case, the temporary orders have been replaced by final orders that delineate the steps Hansen can take to reinstate visits by coming into compliance with court-ordered treatment.

### 4. CR2A

Hansen argues that the court erred in refusing to enforce the CR2A by sequestering the balance of funds owed to him. The court has since disbursed the funds, so this claim is moot. In any case, the court did not err in temporarily sequestering the CR2A funds in the court registry to ensure that its decision would be enforceable. "The court has inherent power to sequester property prior to judgment to preserve the property pending the outcome of the litigation or to aid the court implementing future orders in reference to that property" upon a "strong showing" to justify such relief. 10A WASHINGTON PRACTICE: CIVIL PROCEDURE FORMS AND COMMENTARY § 64.1 (3d ed. 2000) (citing Hockley v. Hargitt, 82 Wn.2d 337, 510 P.2d 1123 (1973)). Additionally, RCW 4.44.480 authorizes the trial court to order money that is subject to litigation to be deposited in court. And CR 64 allows the court to seize property for the purpose of securing satisfaction of judgment. Under the circumstances present in this case, including the court's findings regarding

Hansen's financial evasiveness, this exercise of discretion was not erroneous.

### 5. Jurisdictional Error

Hansen argues that the trial court erred by allowing Engelhart to file a motion for revision directly with the trial court judge, contrary to LCR 7(b)(8)(B)(ii), which states that, for cases not assigned to an individual judge, the hearing shall be scheduled by the Respective Chief Judge. He contends that the error deprived the court of jurisdiction.

Hansen is incorrect. Engelhart moved for revision in September 2023, after the case had been assigned to the trial court judge who heard the trial in February, consolidated the cases, and retained the matter post trial. Even if such an error occurred, it would not have deprived the court of jurisdiction.

### 6. Attorney fees for DVPO renewal

Hansen similarly argues that the trial court lacked jurisdiction in the DVPO case because it was not properly assigned to the judge and because attorney fees are not available in a hearing for a "non-renewed" DVPO. Hansen is incorrect. As discussed above, the matter was properly assigned to the judge and there was no jurisdictional error. And RCW 7.105.310 allows courts to award fees when issuing "any type of protection order." Moreover, contrary to Hansen's argument, the DVPO was renewed twice.

### F. Attorney Fees on Appeal

Engelhart requests an award of attorney fees on appeal under several alternative bases, including RAP 18.1, RCW 26.09.140, RAP 18.9(a), and for Hansen's intransigence. We have discretion to grant attorney fees on appeal. RAP 18.1. "Attorney fees are generally not awarded in a civil action unless authorized by statute, by agreement of the parties, or upon a recognized equitable ground." In re Marriage of Greenlee, 65

Wn. App. 703, 707, 829 P.2d 1120 (1992).

RCW 26.09.140 permits a court to award fees for "maintaining or defending any proceeding under this chapter" based on the financial resources of the parties. "The decision to award fees under RCW 26.09.140 is discretionary and must be based upon a consideration that balances the needs of the spouse seeking fees against the ability of the other spouse to pay." In re Marriage of Moody, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999). Engelhart filed an affidavit of financial need with the court in accordance with RAP 18.1(c), and Hansen filed a response opposing her request for fees.[6] After considering their arguments and relative ability to pay, we exercise our discretion under RCW 26.09.140 and deny Engelhart's request for fees.

Engelhart also argues that fees are awardable on appeal for Hansen's intransigence. We may "award attorney fees and costs based on intransigence of a party, demonstrated by litigious behavior, bringing excessive motions, or discovery abuses." In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). An attorney fee award for intransigence does not require a showing of need or ability to pay. Id. Engelhart argues that Hansen's appeal is a continuation of the same intransigent arguments and behavior he engaged in below. "[A] party's intransigence in the trial court can also support an award of attorney fees on appeal." In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 649 (1999). However, we are not obligated to impose additional fees for a litigant's re-assertion of the same unavailing arguments. We acknowledge that Engelhart's intransigence argument is compelling, and represents a close call. We nevertheless decline to award fees because the $50,000 in fees the trial court awarded

---

[6] Hansen's motion to strike Engelhart's affidavit of financial need is hereby denied.

appear to us to be sufficient, and in the interest of finality.

Engelhart also argues that Hansen's actions on appeal warrant fees as a sanction. RAP 18.9(a) permits an award of attorney fees as a sanction for filing a frivolous appeal.[7] An appeal is frivolous if it presents no reasonably debatable issues and is so devoid of merit that no reasonable possibility of reversal exists. Greenlee, 65 Wn. App. at 710. The fact that an appeal is unsuccessful is not dispositive. In re Marriage of Wagner, 111 Wn. App. 9, 18-19, 44 P.3d 860 (2002). We consider the record as a whole and resolve all doubts in favor of the appellant. Id. Applying these principles, we decline to impose sanctions under RAP 18.9(a).

### III.    CONCLUSION

We affirm the trial court and deny Engelhart's request for attorney fees on appeal.

Díaz, J.

WE CONCUR:

Feldman, J.

Chung, J.

---

[7] Engelhart cites Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 223-24, 829 P.2d 1099 (1992), for the proposition that CR 11 applies to appellate court sanctions. At the time Bryant was decided, RAP 18.7 provided, in relevant part: "Each paper filed pursuant to these rules should be dated and signed by an attorney or party as provided in CR 11." Former RAP 18.7 (1990). But RAP 18.7 has since been revised and no longer mentions CR 11, so sanctions on appeal are no longer available on that basis.